UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SHMUEL STOLLMAN and ELISA
STOLLMAN, individually and on behalf of
their infant children ES and LS,

                        Plaintiffs,            **MEMORANDUM AND ORDER**

        -against-                   20-CV-8937 (JPC)(KNF)

LAKEASHA WILLIAMS, MIRIAM
ORTIZ-DOWNES, GLENN HYMAN,
KAI HAYES, EDWARD O'CONNOR,
ANNEMARIE FUSCHETTI, KEREN
ENNETTE, CARMELA MONTANILE,
EBONY RUSSELL, TONYA
WHEELOCK, and CITY OF NEW YORK,

                        Defendants.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

       Plaintiffs Shmuel Stollman and Elisa Stollman, individually and on behalf of their infant

children ES and LS, brought this civil-rights action pursuant to 42 U.S.C. § 1983 and state law.

The plaintiffs allege, inter alia, that school officials at infant plaintiff ES's New York City public

school determined to make false reports of suspected child abuse to the New York State Central

Register of Child Abuse and Maltreatment ("State Central Register"). According to the plaintiffs,

these reports set off a sequence of events resulting in plaintiff Shmuel Stollman's separation

from his children and prosecution for child abuse in New York Family Court ("Family Court"),

in violation of the plaintiffs' First, Fourth, and Fourteenth Amendment rights.  Before the Court

is the plaintiffs' motion

      for an order, pursuant to Rule 34 of the Federal Rules of Civil Procedure, compelling
      defendants to: 1) produce unredacted records which defendants have produced in
      redacted form; and 2) answer questions at depositions which may identify factual
      allegations that have been made to the New York State Central Register of Child Abuse

1

and Maltreatment concerning plaintiffs, and may confirm the identity of the individuals who have already testified that they reported that infant plaintiff had been abused or maltreated; and 3) pay the costs, including reasonable attorney fees, on the instant motion; and 4) for such other and further relief as may be deemed just and proper.

Docket Entry No. 41.

The defendants oppose the motion.

## PLAINTIFFS' CONTENTIONS

The plaintiffs contend that the defendants have relied improperly on a New York state confidentiality statute, New York Social Services Law § 422 ("N.Y. Soc. Serv. L. § 422") to redact information within the records produced to the plaintiffs and to bar deponents from responding to various questions, including those regarding the circumstances under which reports of suspected child abuse were made to the State Central Register. The plaintiffs assert that federal law, not state law, governs "discoverability and confidentiality" in cases brought in federal court under 42 U.S.C. § 1983, such as this one, and that state confidentiality statutes such as N.Y. Soc. Serv. L. § 422 do not apply. Moreover, according to the plaintiffs, to the extent that N.Y. Soc. Serv. L. § 422 does apply, both individuals who made reports "waived confidentiality by identifying themselves as the reporters while testifying in Family Court, under oath, in the presence of counsel and of both adult plaintiffs." Further, the plaintiffs contend that the protections of N.Y. Soc. Serv. L. § 422 are limited, in that the statute authorizes concealing the identity of the reporter only where the state commissioner of social services (the "Commissioner") "reasonably finds [disclosure] will be detrimental to the safety or interests of such person." N.Y. Soc. Serv. L. § 422(7). According to the plaintiffs, the Commissioner has not made the requisite finding in this case, nor could the Commissioner make the requisite finding in this case, as the reporters disclosed their identities in Family Court more than three years ago, in

2

the plaintiffs' presence, and have not experienced any threat to their safety or interests in the intervening time.

In addition, the plaintiffs contend that much of the information they seek "does not entail identifying these two individuals as reporters" and is thus not subject to any protection under N.Y. Soc. Serv. L. § 422. The plaintiffs assert that the defendants have redacted more material than merely the reporters' identities from documents. The plaintiffs maintain that at the deposition of defendant Ebony Russell ("Russell"), the defendants' counsel barred Russell from responding to questions regarding "a wide variety of information," not merely questions regarding the identity of the reporters.

The plaintiffs urge the Court to follow the approach to N.Y. Soc. Serv. L. § 422 set forth in van Emrik v. Chemung Cty. Dep't of Soc. Servs., 121 F.R.D. 22 (W.D.N.Y. 1988). According to the plaintiffs, the van Emrik court "ordered disclosure of … New York State child abuse investigation records in a §1983 lawsuit, based upon a wrongful removal and detention of a child after an unfounded complaint of child abuse against the plaintiff parents, where the parents already knew the identity of the individual who made the report."   The plaintiffs contend that the defendants' reliance on DeLeon v. Putnam Valley Bd. of Educ., 228 F.R.D. 213 (S.D.N.Y. 2005), in which the court entered a protective order prohibiting the disclosure of the reporter's identity, is misplaced, because in DeLeon, the court found there was "a substantial factual basis for the reporter's suspicion" that abuse had occurred, but in the instant case, no such substantial factual basis exists.

The plaintiffs maintain that, pursuant to N.Y. Soc. Serv. L. § 422(4)(A)(e), a judge may authorize that the name of the reporter be disclosed when "the information in the record is necessary for the determination of an issue before the court. . . ." According to the plaintiffs,

[h]ere, the information is necessary to determine the issue of the liability of the Education defendants, and to enable plaintiffs to prove their claims that those defendants had no reasonable suspicion of plaintiffs. Specifically, plaintiffs claim that school defendants (defendants Russell, Montanile, Ennette, Wheelock, Fuschetti, and O'Connor) falsely claimed that adult plaintiffs had abused infant plaintiffs (Complaint ¶¶ 53-54) and that they did so in retaliation for plaintiffs' complaints of education defendants' misbehavior towards ES (Complaint ¶¶ 51-52).

In support of their motion, the plaintiffs submitted the declaration of Carolyn A. Kubitschek, counsel to the plaintiffs, with Exhibit 1, an Office of Children and Family Services, Child Protective Services Intake Report; Exhibits 2 and 3, excerpts from the transcript of proceedings in the Family Court of the City of New York, County of Kings, in the matter of Administration for Children's Services against Shnuel [sic] Stollman, dated December 14, 2017; Exhibit 4, the defendants' privilege log in the instant action; Exhibit 5, "Family Assessment Response Progress Notes" dated February 2, 2017; Exhibit 6, "Investigation Progress Notes" dated October 30, 2017; and Exhibit 7, "Family Services Progress Notes" dated March 9, 2018. Docket Entry No. 42.

## DEFENDANTS' CONTENTIONS

The defendants contend that "the identities of any individuals who made reports of suspected child abuse and/or neglect to the State Central Register … are protected under state law, … such protections have application in federal court, and … the factors against disclosure strongly outweigh the factors favoring disclosure."  Furthermore, the defendants assert that they have not "waived any privilege arising under state law."

The defendants maintain that N.Y. Soc. Serv. L. § 422 protects the identities of individuals who make reports to the State Central Register.  The defendants rely on DeLeon, in which the court found that N.Y. Soc. Serv. L. § 422 should be applied to protect the identity of the reporter in a case brought under 42 U.S.C. §1981a. The DeLeon court found that the

"substantial threshold showing" has been met "where laws enacted [, such as N.Y. Soc. Serv. L. § 422,] to make individuals more willing to come forward—because their identities will be protected—would be frustrated by disclosure."  DeLeon, 228 F.R.D. at 217 (citing Pennsylvania v. Ritchie, 480 U.S. 39, 60-61 n.17, 107 S. Ct. 989, 103 (1987)).  The DeLeon court then weighed the factors favoring disclosure against those disfavoring disclosure and found that the balance favored maintaining confidentiality of the reporter's identity.  The defendants also rely on Velez v. Reynolds, No. 02 CIV. 8315, 2003 WL 22126962 (S.D.N.Y. Sept. 15, 2003), in which the court found similarly that the factors disfavoring disclosure of the reporter's identity outweighed greatly the factors favoring disclosure.  Id. at *3.

According to the defendants, as in DeLeon and Velez, the defendants in the instant case have made a "substantial threshold showing: disclosure would clearly frustrate laws enacted to encourage reporters, including school officials, to come forward with reports of suspected child abuse and/or neglect."  Moreover, according to the defendants, in the instant case "the factors against disclosure strongly outweigh the factors favoring disclosure because, among other things, disclosure would cause a chilling effect on the reporting of suspected child abuse, and because Defendants reasonably rely on guarantees of confidentiality that are made to them by the State," such as those made in the Summary Guide for Mandated Reporters in New York State.

The defendants maintain that, contrary to the plaintiffs' contentions, the school officials here did have a substantial factual basis for making reports to the State Central Register; moreover, the lack of a "substantial factual basis" underlying the report was only one of many factors considered by the court in DeLeon.  The defendants contend that the plaintiffs' assertion that the identity of the reporters "is necessary to determine the issue of the liability of the Education defendants" was considered and rejected by the court in DeLeon.

The defendants contend that testifying in the Family Court proceeding could not constitute a waiver because, under New York Family Court Act § 166, "[t]he records of any proceeding in the family court shall not be open to indiscriminate public inspection." The defendants maintain that the reporters did not voluntarily relinquish their right to confidentiality, because they relied on the confidentiality protections afforded by the Family Court when they testified in that forum. The defendants request that, "[to] the extent that the Court finds any waiver has occurred, either by individual Defendants or ACS [New York City Administration for Children's Services] attorneys, Defendants respectfully submit that, here, as in <u>Velez</u>, the Court should undertake to 'restor[e] confidentiality to the maximum extent possible.'" <u>Velez</u>, 2003 WL 22126962, at *3.  The defendants request alternatively that the Court find that "any waiver is limited to the specific statements of those individuals who previously testified that they themselves made a report to the State Central Register."

The defendants contend that the redactions made in documents produced to the plaintiffs were limited, and did not remove more information than necessary, because "only the names of the reporters and any information/statements that would tend to identify the reporters" were redacted. The defendants maintain that, during Russell's deposition, she "was instructed not to respond to Plaintiffs' questions only when those questions called for the identities of individuals who made reports to the State Central Register, or called for information that would, if disclosed, reveal the identity of the reporters," contrary to the plaintiffs' assertion that Russell was also instructed not to respond to questions that did not require her to disclose the reporters' identities.

## PLAINTIFFS' REPLY

In their reply papers, the plaintiffs contend that both reporters have waived confidentiality. The plaintiffs maintain that, in addition to testifying in Family Court that they

made the reports, both reporters confirmed voluntarily, during their respective depositions given in the instant action, that each made a report to the State Central Register; these depositions occurred after the instant motion was filed. The plaintiffs assert that "[it] is black-letter law that a party may 'by his actions impliedly waive . . . privilege or consent to disclosure.'" In re von Bulow, 828 F.2d 94, 101 (2d Cir. 1987). The plaintiffs contend that waiver applies to the attorney-client privilege as well as to other privileges recognized by federal law, such as the deliberative-process privilege, and Freedom of Information Act exemptions.  According to the plaintiffs, the voluntary disclosure of otherwise privileged information to a third party constitutes a waiver of the privilege regarding that information; thus, the reporters have waived any confidentiality or privilege in their identities as reporters through their disclosures at their depositions and in the Family Court action. The plaintiffs maintain that Family Court is "open to public observation" pursuant to 22 N.Y.C.R.R. §205.4, and thus, the reporters could not have relied on guarantees of confidentiality made to them by the State when they testified in open proceedings in the Family Court.

The plaintiffs contend that the reporters do not face any threat to their safety from the plaintiffs, because Shmuel and Elisa Stollman have known the reporters' identities for more than three years, since observing them testify in the Family Court action. According to the plaintiffs, "that [the reporters] voluntarily repeated their testimony during their depositions in the instant case shows that they have no fear of retribution."  The plaintiffs contend that the instant case is therefore distinguishable from DeLeon, in which the reporter did not disclose his or her identity to the plaintiff and submitted an affidavit to the court stating, "I am concerned that the disclosure of my identity in this case, . . . subjects me to retribution by the subjects of such reports."

The plaintiffs also contend that disclosing the reporters' identities will not discourage other reporters from coming forward to report suspected child abuse in the future. This is so, according to the plaintiffs, because, under N.Y. Soc. Serv. L. § 422, the Commissioner may always permit the disclosure of a reporter's identity; thus, "people who make reports of suspected child abuse or maltreatment have no guarantee of confidentiality." Moreover, the plaintiffs contend that, in the instant case, the reporters "voluntarily disclosed their own names"; however, "[i]ndividuals who fear reprisals may decide not to disclose their names as readily." The plaintiffs maintain that "in New York Family Court, the names of individuals who have made reports of suspected child maltreatment to the New York State Central Register are routinely disclosed, by the Administration for Children's Services, to the individuals who are the suspected abusers." The plaintiffs assert that New York law does not discourage people from reporting suspected child abuse; rather, it "encourages over-reporting by subjecting professionals to a penalty of up to a year in prison if they fail to report suspected child abuse." See N.Y. Soc. Serv. L. § 420(1).

With their reply memorandum of law, the plaintiffs submitted the declaration of David J. Lansner ("Lansner"), counsel to the plaintiffs, with Exhibit 8, an excerpt from Russell's July 19, 2021 deposition and Exhibit 9, excerpts from the transcript of the December 21, 2017 Family Court proceedings in the matter of ACS-Kings against Shmuel Stollman. See Docket Entry No. 48.

The Court directed the plaintiffs to file the entirety of the transcripts of the minutes generated at the July 2021 depositions of the two individuals who made reports to the State Central Register; one report was made in 2016 and one was made in 2017. Simultaneously with the transcript submissions, the plaintiffs submitted Lansner's "Corrected and Supplemental

Reply Declaration in Support of Motion to Compel Discovery."  In his declaration, Lansner

asserts that, "[d]uring the deposition [of the 2016 reporter], defendant's attorney objected to all

questions that sought to confirm that [the 2016 reporter] had called the State Central Register in

December, 2016, to report that plaintiffs Elisa Stollman and Shmuel Stollman may have abused

or maltreated their daughter, infant plaintiff ES, as [the 2016 reporter] had testified in the Family

Court on December 15, 2017[,]" and "[e]ven when I asked [the 2016 reporter] to confirm that

[the] Family Court testimony had been correct, counsel directed [the 2016 reporter] not to

answer."  Lansner asserts that:

> The statements in ¶¶13-14 of my prior Reply Declaration, dated August 2, 2021, are
> incorrect. When I wrote those two paragraphs, the court reporter had not yet provided a
> transcript of [the 2016 reporter's] deposition, but I was sure that I had remembered [the
> 2016 reporter's] testimony, and, when the transcript arrived ten days later, on August 12,
> 2021, it did not occur to me to read the transcript to check my memory.  Having carefully
> reviewed the transcript for the first time on October 19, 2021, I see that my memory was
> wrong. I acknowledge that mistake, and submit this Declaration to correct the error.

Lansner contends that the 2017 reporter acknowledged making the October 27, 2017 call

to the State Central Register through the following colloquy:

> Q: You never read [ES's] IEP, correct?
> A. Not from cover to cover; no. The only identifying information I would be reading is
> page 1 because I would have needed that information for the SCR call.

According to Lansner, the 2017 reporter "repeated [the] disclosure in a more indirect

fashion, but nonetheless making clear that [the 2017 reporter] had made the report at issue" in

the following colloquy:

> Q. Now, without telling us the name of the person who called the State Central Register,
> did you hear what was told to the State Central Register?
> A. Yes.
> Q. Would you look at the call narrative, please, and tell me if any or all of this reflects
> what was told to the State Central Register?
> A. Yes. That's what was verbally stated to the State Central Register.

Lansner also asserts that, "[s]ince [the 2017 reporter] testified at … deposition that the only other person with [the 2017 reporter] was defendant Tonya Wheelock ("Wheelock"), and that defendant Wheelock did not make the call, [the 2017 reporter] must have made the call."

## LEGAL STANDARDS

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. . . . A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30 or 31; . . . or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

Fed. R. Civ. P. 37(a)(1), (a)(3)(B).

If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. . . . If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5)(A), (a)(5)(C).

Motions to compel under Federal Rule of Civil Procedure 37 "are entrusted to the sound discretion of the district court." United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

New York state law requires school officials, including teachers, school guidance counselors, school psychologists, school social workers, and school administrators, to report to the Office of Children and Family Services, Child Protective Services, when "they have reasonable cause to suspect" that a child is abused or maltreated.  N.Y. Soc. Serv. Law § 413(1)(a).  N.Y. Soc. Serv. Law § 422 establishes a statewide central register of child abuse and maltreatment reports. See N.Y. Soc. Serv. Law § 422(1). Such reports are confidential and only

> made available to: [enumerated individuals including] a court, upon a finding that the information in the record is necessary for the determination of an issue before the court. … Nothing in this section shall be construed to permit any release, disclosure or identification of the names or identifying descriptions of persons who have reported suspected child abuse or maltreatment to the statewide central register or the agency . . . without such persons' written permission[.]

> N.Y. Soc. Serv. Law § 422(4)(A).

> At any time, a subject of a report and other persons named in the report may receive, upon request, a copy of all information contained in the central register; provided, however, that the commissioner is authorized to prohibit the release of data that would identify the person who made the report . . . which he reasonably finds will be detrimental to the safety or interests of such person.

> N.Y. Soc. Serv. Law § 422(7).

"Thus, under New York Law, the identity of a person who is required to report child abuse shall remain confidential, though the report itself will be made available in redacted form to, inter alia, persons named therein." Oglesby v. Eikszta, No. 1:07-CV-51, 2008 WL 11504717, at *1 (N.D.N.Y. Sept. 30, 2008).  However, "[a] reporter is free to disclose his or her identity at any moment." Id. at * 4. See N.Y. Soc. Serv. Law § 422(4).  ("Nothing in this section shall be construed to permit any release, disclosure or identification of the names or identifying

descriptions of persons who have reported suspected child abuse or maltreatment to the statewide

central register . . . without such person's written permission.")

> "In a federal civil rights case, a party invoking a state-law privilege 'must make a
> "substantial threshold showing" that specific harms are likely to result from the
> disclosure of some of these materials. If such a showing is made, the court must then
> balance the interests favoring and opposing confidentiality to determine whether the state
> privilege should be applied.'" Velez v. Reynolds, No. 02 Civ. 8315, 2003 WL 22126962,
> at *2 (S.D.N.Y. 2003) (quoting Morrissey v. City of New York, 171 F.R.D. 85, 92
> (S.D.N.Y. 1997)). Courts have found that a "substantial threshold showing" has been met
> where laws enacted to make individuals more willing to come forward—because their
> identities will be protected—would be frustrated by disclosure. See e.g., Velez, 2003 WL
> 22126962 at *2; Morrissey, 171 F.R.D. at 92; see also Pennsylvania v. Ritchie, 480 U.S.
> 39, 60–61 n. 17, 107 S. Ct. 989, 1003, 94 L.Ed.2d 40 (1987) ("The importance of the
> public interest at issue in this case is evidenced by the fact that all 50 States and the
> District of Columbia have statutes that protect their official records concerning child
> abuse").

> DeLeon, 228 F.R.D. at 217.

As noted above, if a threshold showing is made, a court must balance the interests

favoring and opposing confidentiality. See id. In so doing, the court weighs the factors favoring

confidentiality, which include "the threat to the safety of the reporter (by the subject and alleged

abuser), the weakening of the suspected child abuse reporting system, the chilling of the

mandated reporter candor, and state privacy law" against the factors favoring disclosure, which

include "the relevance of the material to the plaintiff's case, the importance of the material to the

plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in

releasing the information." Id. at 218.

A state-law privilege asserted in a federal court action may be waived by the holder of the

privilege. See Pearson v. Miller, 211 F.3d 57, 70-72 (3d Cir. 2000) (privileges associated with,

inter alia, state statue protecting confidentiality of reports of suspected child abuse had been

waived by the "primary holder of interests in confidentiality"). The voluntary disclosure of

otherwise privileged or confidential material to a third party results in the waiver of the privilege.

For example, "[t]he attorney-client privilege is waived by the voluntary disclosure of otherwise privileged material to a third party." See In re Application Pursuant to 28 U.S.C. § 1782, 249 F.R.D. 96, 101 (S.D.N.Y. 2008).

## APPLICATION OF LEGAL STANDARD

While the plaintiffs describe their motion as one made pursuant to Federal Rule of Civil Procedure 34, the Court understands the plaintiffs' motion to be a motion to compel pursuant to Federal Rule of Civil Procedure 37.  Federal Rule of Civil Procedure 37 requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The plaintiffs did not include such a certification with their motion owing, perhaps, to their reliance on Federal Rule of Civil Procedure 34.  However, in accordance with Federal Rule of Civil Procedure 1, which urges the Court to construe, administer and employ the Federal Rules of Civil Procedure to obtain a just, efficient, and economical resolution of matters put before it, and this judicial circuit's "strong preference for resolution of disputes on their merits," Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986), the Court will consider the motion to compel.

Through their motion to compel, the plaintiffs seek (1) unredacted documents that reveal the name of each person who made a report to the State Central Register and (2) to compel defendants to answer questions at deposition that identify the factual allegations made to the State Central Register and confirm the identities of the reporters. These are closely related matters, as each concerns whether the confidentiality provisions of N.Y. Soc. Serv. L. § 422 should be applied to protect the identity of the reporters from discovery in this action.  The

plaintiffs also seek their reasonable expenses, including attorney's fees, incurred in making the motion.

**Whether the Plaintiffs Can Receive Unredacted Documents**

The plaintiffs seek unredacted versions of documents, including records of Child Protective Services and the Administration for Children's Services; the material redacted from the records, according to the defendants, consists of the names of the reporters and material that would tend to identify the reporters.  Pursuant to N.Y. Soc. Serv. Law § 422(7), the subject of a report may receive, upon request, "a copy of all information contained in the central register; provided, however, that the commissioner is authorized to prohibit the release of data that would identify the person who made the report . . . which he reasonably finds will be detrimental to the safety or interests of such person."  Plaintiffs Shmuel Stollman and Elisa Stollman are the subjects of the reports in question.  As such, the plaintiffs contend that N.Y. Soc. Serv. Law § 422 only protects the confidentiality of a reporter from disclosure to them when the Commissioner "reasonably finds [disclosure] will be detrimental to the safety or interests of" the reporter, N.Y. Soc. Serv. L. § 422(7), and the Commissioner has not made such a finding here. The Court does not understand N.Y. Soc. Serv. L. § 422(7) to mean that the Commissioner must make an individualized finding each time the Commissioner protects the identity of a reporter from disclosure to the subject of the report. See Velez, 2003 WL 22126962, at *3 (rejecting interpretation that maintaining confidentiality of reporters requires a "particularized, case-by-case finding" by the Commissioner).  Even when the reports themselves are disclosed, N.Y. Soc. Serv. L. § 422(4)(A) protects the confidentiality of the "release, disclosure or identification of the names or identifying descriptions of persons who have reported suspected child abuse or

maltreatment to the statewide central register" with no mention of a required finding by the Commissioner.

Therefore, the Court must determine whether the state-law confidentiality protections of N.Y. Soc. Serv. L. § 422 should be applied in this § 1983 action to protect the names and identifying information of the reporters from being revealed to the plaintiffs in unredacted documents. The Court finds that a "substantial threshold showing" that harm is likely to result from the disclosure of material revealing the identities of the individuals who made the reports to the State Central Register has been made. This standard is met where, as here, a law enacted to make individuals more willing to come forward to report suspected child abuse or maltreatment would be frustrated by the disclosure of the identities of these individuals in a federal civil rights action. See DeLeon, 228 F.R.D. at 217; Oglesby, 2008 WL 11504717, at *3; Velez, 2003 WL 22126962, at *2.

After the substantial threshold showing has been made, the Court must balance the factors favoring and opposing confidentiality to determine whether confidentiality provisions of N.Y. Soc. Serv. L. § 422 should be applied.  In the instant case, no threat to the safety of the reporters appears to exist.  The defendants have known of the reporters' identities for more than three years; and unlike in DeLeon, where the reporter filed a confidential affidavit asserting that he or she feared retribution should his or her identity become known, the motion record before the Court is devoid of any evidence establishing either that the plaintiffs have used their knowledge of the reporters' identities in any way that is detrimental to the reporters' safety and interests or that the reporters are fearful for their safety.

However, individuals who make reports to the State Central Register do so in reliance on N.Y. Soc. Serv. L. § 422's guarantee of confidentiality.  See DeLeon, 228 F.R.D. at 218-19.

Allowing this guarantee of confidentiality to be eroded simply upon the bringing of a federal lawsuit would make mandatory reporters less likely to report suspected child abuse and maltreatment. See id. at 219. "Such a chilling effect on the reporting of suspected child abuse would only serve to endanger the children that these laws were specifically designed to protect[.]" Id. Weakening the suspected-child-abuse reporting system and chilling mandated reporter candor —should reported information and reporter identities be disclosed—weigh heavily in favor of maintaining confidentiality and barring disclosure.

Against the factors disfavoring disclosure, the Court must weigh the relevance and importance of the material to the plaintiffs' case, the strength of the plaintiffs' case, and the public interest in the release of the material. The strength of the plaintiffs' case is unknown at this time, and the public interest favors confidentiality in this case because, "as evidenced by the laws protecting the confidentiality of reporters of child abuse in all 50 states[,] the public interest would be best served by the identity of the reporter remaining confidential." Id. at 221. The identities of the reporters are certainly relevant to the plaintiffs' case. However, the Court is not persuaded that the identities of the reporters are so important to the plaintiffs' case that the plaintiffs would be unable to prevail without them. After weighing the relevant factors, the Court finds that the factors favoring confidentiality outweigh the factors favoring disclosure of the reporters' identities through the production of unredacted documents.

Having determined that the confidentiality protections of N.Y. Soc. Serv. L. § 422 should be applied to protect the confidentiality of the reporters' identities, the Court turns to the plaintiffs' contention that the reporters waived those protections by disclosing their identities voluntarily to others. The plaintiffs contend that the December 17, 2021 Family Court testimony of the 2016 reporter regarding the reporter's call to the State Central Register constitutes a

16

waiver of confidentiality.  The Court is not persuaded that the reporter's testimony in Family

Court, in which privacy and confidentiality are protected to a greater extent than in other forums,

constitutes a knowing and voluntary waiver of confidentiality.  Although Family Court

proceedings are open to the public, the presiding judge may exercise his or her discretion to

exclude the public upon a finding, based on supporting evidence, that exclusion is warranted. See

22 N.Y.C.R.R. §205.4(b).  The motion record does not contain information about whether the

public was excluded from the relevant proceedings in Family Court. In the absence of such

information, the Court cannot conclude that the 2016 reporter waived the confidentiality

protections of N.Y. Soc. Serv. L. § 422 through the reporter's Family Court testimony.

    In addition to Family Court testimony, the plaintiffs point to the 2017 reporter's July 29,

2021 deposition testimony in this action as evidence of waiver.  During that deposition, the 2017

reporter testified to having read the first page of ES's individualized education plan ["IEP"]

"because [the reporter] would have needed that information for the SCR [State Central Register]

call."  Under N.Y. Soc. Serv. L. § 422, a reporter can always disclose his or her identity or

permit the Commissioner to do so.  See N.Y. Soc. Serv. L. §422(4). ("Nothing in this section

shall be construed to permit any release, disclosure or identification of the names or identifying

descriptions of persons who have reported suspected child abuse or maltreatment to the statewide

central register or the agency . . . *without such persons' written permission*." (emphasis added)).

The Court finds that the 2017 reporter's voluntary disclosure of the reporter's identity as the

State Central Register reporter, made under oath at the deposition, constitutes a waiver of N.Y.

Soc. Serv. L. § 422's confidentiality protections. Therefore, disclosing unredacted State Central

Register-related documents concerning the 2017 reporter to the plaintiffs is not barred by N.Y.

Soc. Serv. L. § 422's confidentiality protections.

The Court is not persuaded that the 2017 reporter's testimony that the reporter heard what was told to the State Central Register during the call also constitutes a waiver. Contrary to the assertion Lansner makes in his declaration, the 2017 reporter did not indicate in the reporter's testimony that only the 2017 reporter and Wheelock were present when the October 27, 2017 State Central Register call was made. The 2017 reporter testified that the reporter "had a conversation" about ES with a colleague, Wheelock, who did not make the State Central Register call on October 27, 2017, and that Wheelock was "the only person" to whom the 2017 reporter spoke who did not make the call. However, the 2017 reporter testified during the deposition that the 2017 reporter spoke to several other colleagues on October 27, 2017, regarding ES.

**Whether the Plaintiffs Can Compel Testimony at Depositions**

The plaintiffs seek to compel the defendants to answer questions regarding the factual allegations that were made to the State Central Register and to answer questions that identify the reporters. For the reasons set forth above, N.Y. Soc. Serv. L. § 422 protects the confidentiality of the 2016 reporter's identity. Therefore, compelling the 2016 reporter, or others, to answer questions that would reveal the identity of the 2016 reporter is not warranted.

With respect to the 2017 reporter, because that person has waived the confidentiality protections of N.Y. Soc. Serv. L. § 422 respecting a reporter's identity, the plaintiffs are not barred from: 1) questioning the 2017 reporter and others about the reporter's identity; or 2) eliciting information concerning the factual allegations the 2017 reporter made to the State Central Register. These matters are within the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1): the matters are nonprivileged and relevant to the plaintiffs' claims that, inter alia, school officials violated the plaintiffs' constitutional rights by making reports to the

State Central Register when they had no reasonable suspicion that plaintiffs Shmuel Stollman and Elisa Stollman abused or maltreated their children.

**Whether the Plaintiffs May Recover Attorney's Fees and Costs**

The plaintiffs request that the defendants be required to "pay the costs, including reasonable attorney fees, on the instant motion." Pursuant to Fed. R. Civ. P. 37(a)(5)(C), when a motion to compel is granted in part and denied in part, the Court may, after providing an opportunity to be heard, apportion the reasonable expenses for the motion, including attorney's fees. Granting the plaintiffs' motion with respect to the 2017 reporter and denying it with respect to the 2016 reporter is warranted. Therefore, the Court will consider apportioning the reasonable expenses the plaintiffs incurred in bring the motion, after affording the parties an opportunity to be heard on the matter.

**CONCLUSION**

For the foregoing reasons, the plaintiffs' motion to compel, Docket Entry No. 41, is granted in part and denied in part. The defendants shall disclose to the plaintiffs, in an unredacted form, the relevant records concerning the 2017 reporter's identity, and the plaintiffs are permitted to question the 2017 reporter and others at a deposition(s) about the reporter's identity and to elicit information concerning the factual allegations the 2017 reporter made to the State Central Register.

On or before November 12, 2021, the plaintiffs shall submit to the Court, via affidavit or other competent evidence, the reasonable expenses they incurred with respect to making the motion and such other information as the plaintiffs believe will assist the Court in determining whether apportioning of the reasonable expenses incurred is warranted. On or before November 17, 2021, the defendants shall submit any challenge to the reasonableness of the expenses and

19

such other information as the defendants believe will assist the Court in determining whether apportioning the reasonable expenses incurred by the plaintiffs is warranted.  On or before November 19, 2021, the plaintiffs may submit any reply.

Dated: New York, New York                                   SO ORDERED:
       November 5, 2021

                                                          KEVIN NATHANIEL FOX
                                                          UNITED STATES MAGISTRATE JUDGE