UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
SHMUEL STOLLMAN *et al.*,                                               :
                                                                        :
                   Plaintiffs,                                      :
                                                                        :     20 Civ. 8937 (JPC) (JW)
           -v-                                                :
                                                                        :     OPINION AND ORDER
LAKEASHA WILLIAMS *et al.*,                                             :
                                                                        :
                   Defendants.                                      :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Shmuel Stollman ("Shmuel") and Elisa Stollman, individually and on behalf of their children E.S. and L.S., have sued the City of New York and various individual City employees pursuant to 42 U.S.C. § 1983 and New York law. Plaintiffs allege that Defendants' actions in a child abuse investigation and resulting family court proceedings against Shmuel violated their civil rights. During discovery, Plaintiffs subpoenaed third party Safe Horizon, Inc., which operates a facility where E.S. was interviewed, seeking records related to E.S.'s visit. Safe Horizon objected to the subpoena and the Honorable Kevin Nathaniel Fox, to whom this case was referred for general pretrial supervision, denied Plaintiffs' subsequent motion to compel production of the materials and to hold Safe Horizon in contempt for non-compliance with the subpoena. Plaintiffs objected to the Magistrate Judge Fox's order pursuant to Federal Rule of Civil Procedure 72(a). Dkt. 83 ("Objection"). For reasons that follow, the Court sustains the Objection in part, and grants the motion to compel and denies the contempt motion.

I. Background

A. Facts

1. **Plaintiffs' Allegations**

The Court begins by summarizing Plaintiffs' allegations as context for this discovery dispute. The allegations that follow are assumed true only for purposes of resolving Plaintiffs' motions to compel and for sanctions.

E.S., who was born in 2003, is alleged to be "profoundly handicapped," "suffer[ing] from a severe cognitive impairment." Dkt. 1 ("Complaint") ¶¶ 17-18. In 2017, when she was fourteen years old, E.S. "had the intellectual ability and emotional maturity of a 2-year-old child." *Id.* ¶ 18. At that time, E.S. could not speak, count, dress herself, use the toilet, or follow instructions, and she knew only a few words and a "limited number of gestures." *Id.* ¶¶ 18, 20-22. E.S.'s brother, L.S., who was born in 2019, "also has developmental problems" but "not nearly so severe as his sister's." *Id.* ¶ 27.

Because of her disabilities, E.S. "has always attended a special school," determined by the New York City Department of Education, where an Individualized Education Plan has been in place. *Id.* ¶¶ 36-37. Plaintiffs, however, maintain that the school assigned by the Department of Education, PS 77K, was not the right placement for E.S. because it "lacked the resources for her profound needs." *Id.* ¶ 38. School employees gave E.S. tablet computers with images to use to communicate, but E.S. could not effectively use the tablets; the use of pictures to represent concepts and the vocabulary presented exceeded E.S.'s abilities. *Id.* ¶¶ 40-44.

On October 27, 2017, six staff members at PS 77K[1] "met and decided to call the New York State Central Register of Child Abuse and Maltreatment" to report that the Stollmans abused E.S.,

---

[1] These six staff members are named Defendants in this case. *See* Complaint ¶¶ 10-15.

including by not bathing her, by dressing her in soiled clothing, and by sexually abusing her or failing to protect her from sexual abuse. *Id.* ¶ 49. According to Plaintiffs, these allegations were untrue and were made in retaliation for Plaintiffs' complaints about the poor treatment that E.S. was receiving at the school. *Id.* ¶¶ 50-54. That same day, Defendant Miriam Ortiz-Downes, a child protective specialist and caseworker for the City's Administration for Children's Services, visited the Stollmans' home, accused Shmuel of abusing E.S., and ordered Shmuel to leave the home immediately. *Id.* ¶¶ 7, 81. Ortiz-Downes additionally threatened to remove E.S. from the home unless Shmuel left. *Id.* ¶ 82.

On October 30, 2017, the City and its employees "commenced child abuse proceedings in the Family Court of the State of New York" alleging that Shmuel had abused and neglected E.S. and L.S. *Id.* ¶ 86. Plaintiffs allege in the instant suit that Defendants lacked probable cause to believe that E.S. or L.S. had been abused. *Id.* ¶¶ 89-90. The Family Court, however, ordered Shmuel to leave the home and prohibited him from contacting his family. *Id.* ¶ 91.

Shortly after the commencement of these family court proceedings, Ortiz-Downes arranged for E.S. to be forensically interviewed at the Brooklyn Child Advocacy Center on November 8, 2017. Dkt. 56 ("Kubitschek Decl.") ¶ 4. Safe Horizon is affiliated with the Brooklyn Child Advocacy Center. *Id.* ¶ 16.[2] "Plaintiffs believe that the interview showed that ES was not able to communicate verbally or with her tablet computer, or, alternatively, that ES communicated information which exonerated her father," reasoning that "[h]ad ES communicated any inculpatory

---

[2] While Plaintiffs describe Safe Horizon as the Brooklyn Child Advocacy Center's corporate parent, Kubitschek Decl. ¶ 4, Safe Horizon describes itself as "the designated legal entity responsible for coordinating" the Center's "operations," and denies that it is the Center's corporate parent, Dkt. 64 ("Robertson Decl.") ¶ 5 & n.1. Any discrepancy here is not material to the resolution of the instant discovery dispute.

information, the City would . . . have introduced that information into evidence at the trial." Objection at 3.

On February 14, 2018, after a trial, the Family Court allowed Shmuel to return home to his family under certain conditions. Complaint ¶ 96. On July 17, 2018, all charges against Shmuel were dropped. *Id.* ¶ 101.

**2. Procedural History**

Plaintiffs filed this suit on October 26, 2020, alleging a variety of claims under federal and state law pursuant to 42 U.S.C. § 1983. Complaint ¶¶ 107-162. As relief, Plaintiffs ask this Court to declare unconstitutional any City policies (1) of removing and detaining children from parents who did not abuse, neglect, or endanger them, without probable cause, due process of law, and constitutionally adequate investigations; (2) of conducting constitutionally deficient investigations of reports of possible abuse and ignoring facts that would render any such report unfounded; and (3) of conducting strip searches of children during child abuse and neglect investigations without probable cause, consent, court orders, or exigent circumstances. *Id.* at p. 27. Plaintiffs further seek, among other things, compensatory and punitive damages. *Id.* at p. 27-28. On May 4, 2021, the Court referred the case to Judge Fox for general pretrial supervision. Dkt. 24.

During discovery, Plaintiffs requested documents related to the Brooklyn Child Advocacy Center's interview of E.S. from the City, but the City denied having any such records. Kubitschek Decl. ¶¶ 8-11. Plaintiffs then served Safe Horizon with a subpoena on July 16, 2021. Dkt. 49, Exh. 2 ¶ 16. Safe Horizon's general counsel responded on July 29, 2021 that Safe Horizon would only honor the subpoena if it was court-ordered. *Id.* at ¶¶ 18-19. Accordingly, on August 3, 2021, Plaintiffs requested that Judge Fox so-order a subpoena seeking "all medical records; reports; evaluations; and audiotaped and videotaped interviews, of infant plaintiff[] ES, seen at Brooklyn

Child Advocacy Center on November 8, 2017." Dkt. 49; *see id.*, Exh. 1. Judge Fox denied the request on August 19, 2021, explaining that "[Federal] Rule [of Civil Procedure] 45(a)(3) does not contemplate a judicial officer's involvement in the issuance of a subpoena." Dkt. 51 at 1.

Plaintiffs then served Safe Horizon with another subpoena on August 20, 2021. Kubitschek Decl. ¶ 24. The subpoena sought all of Safe Horizon's "documents and electronically stored information" concerning E.S., including "notes, medical records, laboratory and test results; reports, evaluations; and audiotapes and videotapes." Robertson Decl. ¶ 23 (quotations omitted), Exh. B. On September 3, 2021, Safe Horizon objected to the subpoena, arguing, among other things, that the subpoena "s[ought] records and information that are confidential and protected under the New York Social Services Law . . . § 423-a." Dkt. 53 ¶ 1.

On October 5, 2021, Plaintiffs moved to compel Safe Horizon's compliance with the subpoena and for the Court to hold Safe Horizon in contempt. Dkt. 54. Safe Horizon opposed on October 12, 2021, Dkt. 63, and Plaintiffs replied on October 14, 2021, Dkt. 65. At a hearing on the motion before Judge Fox on November 18, 2021, Safe Horizon's counsel represented that Safe Horizon "has in its possession a small number of . . . case-tracking documents" indicating that "an interview was conducted, and identifying parties to the interview," but "no notes . . . as to any conversations with the child [or] child's parents." Dkt. 86 ("Hearing Tr.") at 6:8-13.[3] Plaintiffs' counsel responded that "[w]hatever those records are, they are part of the information the subpoena requests." *Id.* at 6:21-23. In other words, "[P]laintiffs would . . . like whatever Safe Horizon has, regardless of how they characterize it," *id.* at 13:15-16, and argued that such records should be produced under both federal and state law, *id.* at 13:20-14:2. Safe Horizon responded by arguing

---

[3] Safe Horizon's deputy general counsel has attested that Safe Horizon "does not possess any audio or video recordings" or "written notes" of the relevant interview. Robertson Decl. ¶ 16; *see* Dkt. 63 at 5 n.1.

5

that the requested documents are confidential and that if the confidentiality "is waived, or if it's broken, then that could, in fact, have a real chilling effect on the ability of parents and their kids and guardians to report these instances of child abuse." *Id.* at 14:5-13. Safe Horizon also suggested during the hearing and subsequently that the City may possess additional records of the interview, *see id.* at 8:14-21; Robertson Decl. ¶ 16, but as noted, the City has denied that it does, *see* Kubitschek Decl. ¶¶ 8-11; *see also* Hearing Tr. at 12:25-13:10 (Defendants' counsel representing that Defendants had searched for records relating to the Brooklyn Child Advocacy Center interview of E.S. and failed to locate any records but would speak with the City's Administration for Children's Services to ensure that such records do not exist in a database).

Judge Fox denied the motion on the record at the November 18, 2021 hearing, *see* Hearing Tr. at 16:18-18:9, and later memorialized that ruling in a brief written Order, *see* Dkt. 77. In reaching his ruling, Judge Fox examined section 423-a(5)(a) of the New York Social Services Law and whether this action amounts to a "relevant court proceeding" under that statute. Hearing Tr. at 16:19-17:25.[4] Judge Fox concluded "that the instant proceeding is not one that the statute is speaking to because it's not one for the adjudication of a child abuse allegation. It's certainly not a proceeding where there's any investigation or p[ros]ecution." *Id.* at 17:18-22. Judge Fox's written Order similarly held "that the instant action is not a 'relevant court proceeding,' as contemplated by N.Y. Social Service Law § 423-a(5)([a]), which would permit the disclosure to the plaintiffs of the material described in the subpoena." Dkt. 77 at 1-2. Because Judge Fox concluded that Safe Horizon need not comply with the subpoena, Judge Fox denied the motion to find Safe Horizon in contempt. Hearing Tr. at 17:25-18:9; Dkt. 77 at 2. At no point in his oral

---

[4] Section 423-a, including the statute's "relevant court proceeding" language, is discussed shortly in this Opinion and Order.

ruling or written Order, however, did Judge Fox examine Safe Horizon's objection to the subpoena under federal law.

Plaintiffs objected to Judge Fox's ruling under Federal Rule of Civil Procedure 72(a) on December 2, 2021. Safe Horizon opposed on December 17, 2021, Dkt. 88 ("Opposition"), and Plaintiffs replied on December 27, 2021, Dkt. 89 ("Reply"). On February 1, 2022, following Judge Fox's retirement from the bench, general pretrial supervision over this case was reassigned to the Honorable Jennifer E. Willis.

## II. Analysis

### A. Motion to Compel

#### 1. Legal Standards

Under Federal Rule of Civil Procedure 72(a), this Court must "modify or set aside any part" of a magistrate judge's nondispositive order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A magistrate [judge]'s ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Thai Lao Lignite (Thai.) Co., Ltd. v. Gov't of Lao People's Dem. Rep.*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (cleaned up).

"In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be discoverable." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (quotations and alteration omitted). While "discovery should not be compelled if the [sought] information is privileged," *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004), "the burden of showing entitlement to a privilege is on the party asserting that privilege," *In re*

7

*Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007).  Federal law governs privilege claims except in "civil case[s] . . . for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Federal law also governs when "[t]he evidence sought . . . is relevant to both the federal and state claims."  *Von Bulow v. Von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987); *see also, e.g.*, *Hernandez v. Off. of the Comm'r of Baseball*, 331 F.R.D. 474, 476 (S.D.N.Y. 2019).

Accordingly, "[q]uestions of privilege in federal civil rights cases are governed by federal law."  *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988); *see also Saavedra v. City of New York*, No. 19 Civ. 7491 (JPC), 2021 WL 104057, at *2 (S.D.N.Y. Jan. 12. 2021).  "In a federal civil rights case, a party invoking a state-law privilege must make a substantial threshold showing that specific harms are likely to result from the disclosure of some of these materials.  If such a showing is made, the court must then balance the interests favoring and opposing confidentiality to determine whether the state privilege should be applied."  *DeLeon v. Putnam Valley Bd. of Educ.*, 228 F.R.D. 213, 217 (S.D.N.Y. 2005) (quotations omitted).

Here, the magistrate judge applied the improper legal standard by exclusively analyzing the privilege question under New York law.  *See* Hearing Tr. at 16:19-18:12.  "Appli[cation of] the state law . . . directly, instead of applying the federal law of privilege," is "error" that may "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating . . . section 1983."  *King*, 121 F.R.D. at 187 (quotations and alteration omitted); *cf. Cyris Jewels v. Casner*, No. 12 Civ. 1895 (KAM), 2016 WL 2962203, at *6 (E.D.N.Y. May 20, 2016) (affirming a magistrate judge's ruling that "careful[ly] balance[ed] . . . the factors").  Because the magistrate judge erred by applying an incorrect standard, the ruling was "contrary to the law."  Fed. R. Civ. P. 72(a).  To determine whether that error was "harmless," the Court

8

proceeds to "[a]pply[] the correct standard" to the case. *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17 Civ. 4570 (LAK), 2018 WL 671258, at *1 (S.D.N.Y. Jan. 31, 2018).

2. **Analysis**

As noted, Judge Fox conducted his analysis solely under New York Social Services Law section 423-a, which regulates "child advocacy centers" in New York. N.Y. Soc. Serv. Law § 423-a(1). The section provides, *inter alia*, that "[t]he files, reports, records, communications, working papers or videotaped interviews used or developed in providing services under this section are confidential." *Id.* § 423-a(5)(a). An exception allows "[d]isclosure" of such materials "for the purpose of investigation, prosecution, and/or adjudication in any relevant court proceeding." *Id.*

Initially, there is the question of whether section 423-a even creates a litigation *privilege* for Safe Horizon to assert. "If the information sought is confidential but not privileged [under state law], Rule 26 does not limit disclosure of otherwise discoverable information." *Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, 186 F. Supp. 3d 278, 284 (S.D.N.Y. 2016) (cleaned up). "A non-disclosure or confidentiality provision in a statute may not always create an evidentiary privilege, especially if the legislature did not explicitly create" one. *Amtrust N. Am., Inc.*, 186 F. Supp. 3d at 284 (quotations omitted); *see also, e.g.*, *Steinberg v. Mount Sinai Med. Ctr.*, No. 12 Civ. 51 (SLT) (VMS), 2014 WL 1311572, at *4-5 (E.D.N.Y. Mar. 31, 2014) (explaining that a New Jersey child abuse confidentiality provision did not create a privilege). In the absence of a valid privilege, the information must be disclosed even if the objector otherwise meets the statutory criteria. *See Flores v. Stanford*, No. 18 Civ. 2468 (VB) (JCM), 2022 WL 354719, at *7 (S.D.N.Y. Feb. 7, 2022). While Plaintiffs argue that section 423-a does not create an evidentiary privilege, they cite no New York case law on the question. *See* Objection at 6-7.

Another question is whether this civil lawsuit regarding state authorities' allegedly wrongful accusations of child abuse is a "relevant court proceeding" for purposes of section 423-a. If so, the New York statute explicitly authorizes the release of the records for their use in this litigation. Plaintiffs interpret "relevant" to include collateral civil lawsuits regarding child abuse, *see* Objection at 11-13, while Safe Horizon interprets "relevant" to include only proceedings aimed at impeding or rectifying child abuse, *see* Opposition at 9-12. Here too, the parties have identified no case law squarely on point interpreting the language.[5]

It is not necessary to resolve these questions. That is because, as noted, under federal law, Safe Horizon must make a "substantial threshold showing that specific harms are likely to result from disclosure" of the responsive materials. *DeLeon*, 228 F.R.D. at 217 (quotations omitted). Given Safe Horizon's acknowledgment of the limited scope of potentially responsive records, what already has been publicly revealed regarding the Brooklyn Child Advocacy Center's interview of E.S., and Safe Horizon's articulated justification for withholding those records, Safe Horizon has not shown specific harms likely to result from disclosure. In the absence of that threshold showing, the Court need not reach whether Safe Horizon has asserted a valid privilege under New York state law. *See Flores*, 2022 WL 354719, at *7 (finding that the defendants failed to make the necessary showing of specific harm that would result from disclosure after "assuming, *arguendo*, that the state law created . . . a privilege"); *cf. Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.

---

[5] Both parties point to *In re W. & V.*, 50 Misc. 3d 1220(A), 2014 WL 11101301 (N.Y. Fam. Ct. 2014), as a potentially on-point case. In that case, a family court issued a protective order barring, among other things, "re-disclos[ure]" of a "report from the Child Advocacy Center," but did not limit the parent's "ability to obtain relevant and material documents for use in" a related "criminal court proceeding," which would be governed by the "criminal court in accordance with criminal law procedures." *Id.* at *1, 10. Because the family court did not address whether the Child Advocacy Center document could be admissible in a non-family court proceeding, instead reserving that question for the criminal court, *In re W. & V.* is orthogonal to the dispute here.

2003) ("Where a . . . claim turns on novel or unresolved issues of state law, . . . principles of federalism and comity may dictate that these questions be left for decision by the state courts." (quotations omitted)); *Tapia v. BLCH 3rd Ave LLC*, 906 F.3d 58, 64 (2d Cir. 2018) (Calabresi, J., concurring) ("[W]here an issue of state law is unlikely to be heard in state court, federal courts should be especially sensitive to any possible doubts.").

Instead of identifying specific harms resulting from disclosure, Safe Horizon broadly points to the "powerful public interest in protecting confidentiality of information concerning child abuse," arguing that disclosure in this case could present "real risk[s] of retaliation and further abuse, trauma or embarrassment," "the subject child having to re-live . . . traumatic experiences," and "a chilling effect on reporting instances of abuse." Opposition at 7, 13 (citing Robertson Decl. ¶¶ 13-14). "Without question, the investigation and resolution of incidents of child abuse is one of the most important regulatory objectives that a state may undertake." *DeLeon*, 228 F.R.D. at 219 (quotation omitted). But the objector must "explain the reasons for nondisclosure, with particularity"; Safe Horizon has not done so and merely points to a "fear of possible events based on conclusory assertions." *Flores*, 2022 WL 354719, at *6 (quotations omitted). Although those interests "may sometimes satisfy the 'substantial threshold showing' requirement," Safe Horizon does not "explain with any particularity how the safety of victims or community members would be compromised" in the specific circumstances presented here. *Id.* at *8. Instead, Safe Horizon relies primarily on one paragraph in a declaration from its deputy general counsel that speaks generally to its confidentiality interests, without addressing any specific harm that could result from disclosure of the particular records at issue. *See* Robertson Decl. ¶ 13.

Significantly, Safe Horizon itself has acknowledged that limited materials would be divulged to Plaintiffs if it complies with the subpoena. At the hearing before Judge Fox, Safe

Horizon's counsel represented that it possesses "a small number of . . . case-tracking documents," which indicate that "an interview was conducted" and which "identify[] the parties to the interview," but does not have any notes reflecting "any conversations with the child [or] the child's parents." Hearing Tr. at 6:8-13.  Disclosure of such records—revealing essentially the interview's occurrence, but not its content—is unlikely to lead to "abuse, trauma or embarrassment" or "chill[] . . . reporting."  Opposition at 13.  This is especially the case because all parties agree that E.S. was interviewed at the Brooklyn Child Advocacy Center, and have acknowledged so publicly during this litigation.  *See* Robertson Decl. ¶ 15; *see generally* Hearing Tr.  To the extent that the records reveal who reported the suspected abuse, the Complaint identifies the specific individuals—*i.e.*, six of the named Defendants—who allegedly reported to the New York State Central Register of Child Abuse and Maltreatment that the Stollmans had abused E.S.  *See* Complaint ¶ 49.  Plaintiffs further have publicly stated in this litigation that another Defendant, Ortiz-Downes of the Administration for Children's Services, arranged for E.S. to be interviewed at the Brooklyn Child Advocacy Center.  *See* Kubitschek Decl. ¶ 4.  Moreover, the Court may take appropriate further steps to safeguard any sensitive material, should such protective measures be appropriate.  *See, e.g.*, *Flores*, 2022 WL 354719, at *9 (noting that "the Court can minimize the probability of harm . . . by requiring that the materials be designated" attorneys' eyes only).[6]

Even if Safe Horizon had satisfied the "substantial threshold showing" requirement, the public interest would favor disclosure for similar reasons.  Plaintiffs allege, among other things, that Defendants improperly initiated family court proceedings against Shmuel based on a bogus allegation of sexual abuse premised in part on the claim that E.S. had reported abuse at her school.

---

[6] Judge Fox previously entered a protective order governing discovery in this case, Dkt. 28, and Plaintiffs have indicated that they agree that the protective order would encompass the Safe Horizon records at issue, Objection at 8.

Plaintiffs maintain that E.S. was not capable of communicating in such a manner to school officials. The interview of E.S. at the Brooklyn Child Advocacy Center is a legitimate target for inquiry in connection with those allegations. Safe Horizon does not argue that the "materials sought are [not] relevant to the plaintiff's cause of action," that Plaintiffs' action is "meritless," or that Plaintiffs have failed to show "the public interest in giving force to the civil rights laws." *King*, 121 F.R.D. at 194-95. Moreover, even if the responsive records ultimately prove to be of limited probative value to Plaintiffs, that likely would also mean there is little risk of harm from producing them in discovery. And again, under federal law, Safe Horizon has the burden of showing a likelihood of specific harm, which it has not done. *See Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 184; *DeLeon*, 228 F.R.D. at 217. To be sure, a different case—involving more sensitive materials sought with specific harms likely to result from disclosure—could lead to a different outcome. But the limited nature of the potentially responsive materials here, coupled with the prior public disclosure of information regarding the Brooklyn Child Advocacy Center's interview of E.S., favors enforcement of the subpoena.

The Court also is not persuaded by Safe Horizon's argument that "federal courts in New York have consistently applied confidentiality provisions . . . to prevent disclosure of confidential information concerning child abuse." Opposition at 7. In making this argument, Safe Horizon relies heavily on cases in which substantial volumes of investigative records were, in fact, produced in discovery. *Id.* While those authorities support limited protections, such as sealing confidential records or redacting the names of reporters of child abuse, they do not support a wholesale refusal to turn over records, especially not the limited records at issue here.[7] Safe

---

[7] S*ee DeLeon*, 228 F.R.D. at 214-16 (summarizing facts in investigative files, and resolving a dispute concerning only the disclosure of an abuse reporter's identity); *Walker v. City of New*

Horizon provides no persuasive reason why the materials at issue here cannot be subject to similar protections, such as the existing protective order or additional appropriate measures that Safe Horizon may seek from the Court.

The Court additionally pauses to note that its assessment of the public interest may consider the availability of the evidence from other sources. *See King*, 121 F.R.D. at 194. Safe Horizon claims that "Defendant City of New York should have information and, possibly, documents concerning the interview." Robertson Decl. ¶ 16. But this discovery dispute relates to the potential sensitivity of the materials, not the identity of their discloser. And "the more the information is elsewhere available, the less it is confidential." *King*, 121 F.R.D. at 195. Regardless, the City has repeatedly denied that it has responsive materials in its possession. *See* Kubitschek Decl. ¶¶ 8-11; Hearing Tr. at 12:25-13:10.

## C. Motion for Contempt

Plaintiffs additionally request that Safe Horizon be held in contempt for failing to produce materials in compliance with the subpoena. Objection at 17; Reply at 7-9. "The court . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(g). But "courts in this district generally find non-parties in contempt upon failure to comply with a subpoena only when they also violate a court order to do so." *Jam Indus. USA, LLC v. Gibson Brands, Inc.*, No. 19 Misc. 508 (LTS), 2020 WL 4003280, at *6

---

*York*, No. 12 Civ. 2535 (WFK) (MDG), 2013 WL 12358693, at *1 (E.D.N.Y. Apr. 8, 2013) (noting that the defendant produced records from a child abuse investigation under seal, and resolving a dispute as to the propriety of the public filing of certain of those records); *Oglesby v. Eikszta*, No. 07 Civ. 51 (NPM) (RFT), 2008 WL 11504717, at *1, 4 (N.D.N.Y. Sept. 30, 2008) (overruling objections to production of abuse investigation documents, excepting only the names of any abuse reporters, which would be redacted); *Velez v. Reynolds*, No. 02 Civ. 8315, 2003 WL 22126962, at *1-2 (JGK) (DFE) (S.D.N.Y. Sept. 15, 2003) (ordering the redaction of a reporter's name in previously disclosed investigation records).

(S.D.N.Y. July 15, 2020); *see also, e.g., In re Application of the Kingdom of Morocco*, No. 08 Misc. 85 (KMW), 2009 WL 1059786, at *2 (S.D.N.Y. Apr. 16, 2009); 9A Fed. Prac. & Proc. § 2465 (3d ed. 2022) ("The district judge normally will preface a contempt citation with an order directing . . . compliance with the subpoena."). Because Safe Horizon has not failed to comply with a court order requiring production, the motion for contempt is denied.

While Plaintiffs request attorneys' fees, *see* Objection at 17, they do not cite a basis for that relief, *see generally id.* Thus, the request is denied. *See Xiaochun Gao v. Savour Sichuan Inc.*, No. 19 Civ. 2515 (JPC) (KHP), 2021 WL 4892864, at *3 (S.D.N.Y. Oct. 20, 2021) (denying a motion for attorneys' fees in a discovery dispute when the movant supplied "no legal basis or justification"). Even if Plaintiffs specified the grounds for their fee request, "[t]he only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena" is contempt, as Rule 37 does not apply to third-party subpoenas. *In re Application of Sumar*, 123 F.R.D. 467, 473 (S.D.N.Y. 1988). Because the Court declines to hold Safe Horizon in contempt, Plaintiffs' request for attorneys' fees is likewise denied.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Objection is sustained in part. The motion to compel discovery is granted, and the motion for contempt is denied. The parties shall meet and confer regarding an appropriate extension of discovery and file a status letter by June 6, 2022.

SO ORDERED.

Dated: June 1, 2022
      New York, New York

                                            JOHN P. CRONAN
                                            United States District Judge